UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN THOMAS MOORE,<br>                  Plaintiff,<br>      v.<br><br>SUSEN ROSSINO, M.D.; BRIAN LUFFEY;<br>PRIMECARE MEDICAL INC.,<br><br>                  Defendants. | No. 2:14-cv-00870-DSC-MPK<br><br>CIVIL ACTION - LAW<br><br>Hon. David S. Cercone<br>Magistrate Judge Maureen P. Kelly<br><br>JURY TRIAL DEMANDED |

### **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

AND NOW comes Defendant Susen Rossino, M.D., by and through her attorneys, Terry C. Cavanaugh, Esquire, Brett C. Shear, Esquire and Marshall Dennehey Warner Coleman & Goggin, and files the following Brief in Support of Motion for Summary Judgment, stating as follows:

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 2014, Plaintiff commenced this action in the Court of Common Pleas of Lawrence County, Pennsylvania.[1] The case was promptly removed to this Court. Plaintiff then twice amended his Complaint and the current operative Complaint is the Second Amended Complaint (dkt. 20).

Plaintiff has asserted claims against Dr. Rossino under 42 U.S.C. §1983. Second Amended Complaint, ¶1. Dr. Rossino filed a Motion to Dismiss Plaintiff's Second Amended Complaint on the grounds that Plaintiff completely failed to plead a claim of deliberate indifference to a serious medical need and, thus, could not proceed under Section 1983 (dkt. 21

---

[1] Plaintiff initially named Primecare Medical, Inc., Brian Covert (Warden), Jason Hilton (Assistant Warden), Brian Luffey (Primecare administrator) and this Defendant, Susen Rossino, M.D. as Defendants. Plaintiff elected to dismiss all of the Defendants other than Dr. Rossino recognizing that his claims of the alleged failure to treat his Hepatitis-C have been dismissed and his claims have been limited to his allegations of untreated pain complaints.

and 22).  The Court agreed with Dr. Rossino is part, but allowed Plaintiff to pursue a limited portion of his claims as follows:

> Plaintiff's Second Amended Complaint **alleges his disagreement with the course of treatment for his Hepatitis-C, which this Court agrees is not sufficient to sustain a claim upon which relief may be granted**. However, Plaintiff also alleges that he has requested but has not received any treatment for persistent severe pain related to his condition. Based upon his allegation that Defendants [Rossino] and Luffey were aware of but refused to treat Plaintiff's severe pain, at this early stage of the litigation, Plaintiff has alleged sufficient facts to support a claim upon which relief may be afforded as to each named Defendant.

Report and Recommendation regarding Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, p. 1 (dkt 39) (emphasis added).[2]

The Court further held as follows with respect to the limits of the claim that Plaintiff was permitted to pursue:

> The Court notes that going forward, **should the evidence point to a dispute over the form of treatment or diagnostic techniques, or a claim of negligence, Defendants will be entitled to the entry of judgment in their favor**. See, *Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court."). However, at this juncture, the record does not establish whether Plaintiff reported his severe pain or any steps taken to address Plaintiff's complaints of pain, rendering dismissal inappropriate.

Id. at p. 7, n. 1 (emphasis added).

Plaintiff was at the relevant times a pretrial detainee in the Lawrence County Jail. Second Amended Complaint, ¶3.  Plaintiff was incarcerated in the Lawrence County Jail from June, 2012 until May, 2015.  Second Amended Complaint ¶9.  Plaintiff was not sentenced until May 7, 2015.

---

[2] The Report and Recommendations were adopted by The Honorable David S. Cercone (dkt. 43).

Plaintiff has had Hepatitis-C since 1996.  Deposition of Shawn Moore, Exhibit A, p. 7.  Plaintiff also had Crohn's Disease, a disease which causes chronic inflammation of the intestinal tract.

Susen Rossino, M.D. is a medical doctor.  Dr. Rossino saw patients at the Lawrence County Jail through a contract that Primecare Medical, Inc. had with Dr. Rossino's employer.  She had no direct contract with Primecare Medical, Inc. or the Jail.  Primecare Medical, Inc. also directly employed nurses who saw patients at the Lawrence County Jail.

Primecare operates on a formulary, much like an insurance company, determining what medications a patient/inmate can receive.  Primecare also has utilization committees which determine the treatment that a patient can receive.  Deposition of Dr. Rossino, pp.100-101 , Exhibit B.  Dr. Rossino has no input into Primecare's formulary and is not a member of its utilization committee.  Exhibit B, p. 101; Exhibit A, p. 36.

At the times relevant hereto, Dr. Rossino saw patients at the Lawrence County Jail one day per week.  Exhibit B, p. 69.  Dr. Rossino would see Plaintiff *at least* every three months during "chronic care" visits to monitor his Hepatitis-C.  Exhibit B, p. 17.  Dr. Rossino does not order medication for Hepatitis-C treatment – that must come from a specialist  Exhibit B, p. 86.[3]

---

[3] Inasmuch as the Court has already dismissed Plaintiff's claims regarding the treatment of his Hepatitis-C, Dr. Rossino will not fully detail the history of her monitoring that disease.  However, because it is anticipated that Plaintiff will nonetheless persist in arguing about that treatment despite the Court's clear ruling dismissing those claims, Dr. Rossino does note that there is no legitimate dispute that at least every three months, during his chronic care visits, Dr. Rossino ordered and reviewed blood tests of Plaintiff's liver enzymes (ALT tests) in connection with monitoring his Hepatitis-C.  From day-to-day, there is always going to be variability in liver enzymes in any person.  Exhibit B p. 39.  These ALT tests were monitored by Dr. Rossino to see if the liver enzyme levels were changing rapidly along with reviewing the patient's presentation to determine how Plaintiff's Hepatitis-C was being controlled or progressing.  Exhibit B, p. 82.  During the times alleged in Plaintiff's Second Amended Complaint, there was no significant variability or elevation that caused Dr. Rossino any concern.  Furthermore, Plaintiff will likely argue about Primecare's Hepatitis-C Protocol, but Dr. Rossino had no involvement in developing that Protocol (Plaintiff has adduced no evidence to the contrary) and Plaintiff's counsel elected not to take the deposition of anybody from Primecare.  That Protocol is attached hereto as Exhibit N.  Plaintiff's counsel's interpretation of that Protocol is not evidence.  That Protocol does not deal with pain management, which is the remaining claim left in this case .  In any event, Plaintiff will argue that under the Protocol his ALT levels were elevated for two out of three months which warranted an RNA assay.  Dr. Rossino testified that the Protocol did not require, *but only gave her the option of*,

3

If Plaintiff needed to see Dr. Rossino more often, the Lawrence County Jail would require him to fill out a Medical Request Slip (also known as a Sick Call Slip). Those Medical Request/Sick Call Slips are not given to Dr. Rossino to review. Exhibit B, p. 64. Those Slips are given to the Primecare Nurses who then schedule appointments as needed. Exhibit B, p. 35.

During the times at issue, Dr. Rossino was not given grievance forms submitted by prisoners to the Lawrence County Jail. Exhibit B, pp. 50; 64; Exhibit A, pp. 40-41. Dr. Rossino had no supervisory authority over Primecare's nurses.

Plaintiff claims that he experienced pain in his liver as a result of his Hepatitis-C. However, that contention is nothing more than bare speculation. Plaintiff has no medical education or training. Exhibit A, p. 79. Plaintiff has submitted no competent evidence that the pain he complained of emanated from his liver or only could have emanated from his liver.

Furthermore, as set forth in this Defendant's Concise Statement of Material Facts, Plaintiff had been complaining of abdominal pain since well before he ever saw Dr. Rossino and other medical professionals suggested causes other than the liver, such as symptoms related to his Crohn's Disease and right-sided diverticulosis (a condition causing small, bulging pouches to develop in the digestive tract). *See* Defendant's Concise Statement of Material Facts, Nos. 5-11 and Exhibits C and D. Accordingly, there is no reasonable dispute that there were multiple

---

ordering that assay. Exhibit B, p. 41. If that RNA assay is positive, the Protocol further states: "evaluate for contraindications for treatment." Listed under the "**absolute** contraindications for treatment" in the Protocol is a "Prison Sentence < Time for work-up and treatment (typically 18 months)." Plaintiff was not sentenced until May 7, 2015 and, therefore, further workup and treatment was absolutely contraindicated under the Primecare Protocol while he was a pretrial detainee in the Lawrence County Jail and under the care of Dr. Rossino. Accordingly, this argument is a complete red herring because, under the Primecare policy, treatment of Plaintiff's Hepatitis-C was absolutely contraindicated during the time periods at issue. Plaintiff has dismissed all of his claims against Primecare. As already stated, this argument is inappropriate because it has already been dismissed; however, Plaintiff's argument is also simply wrong under the very Protocol on which that argument relies. In any event, the alleged failure to follow Plaintiff's counsel's interpretation of that Protocol could, at best, be characterize as inadvertence and is not deliberate indifference. The Court should also be aware, as set forth in this Defendant's Concise Statement of Material Facts, that even when Plaintiff was referred out to a liver specialist and the Hepatitis-C testing and more advanced treatment was recommended, Plaintiff refused that testing and treatment. Exhibits I, J, K, L and M.

potential causes of Plaintiff's alleged abdominal pain, none of which were clear.  As set forth below, Plaintiff's complaints do nothing more than call into question the medical judgment of Dr. Rossino who was investigating the cause(s) of his complaints and attempting different treatments to help him and complaints about the exercise of medical judgment are not cognizable in this case.

During Plaintiff's medical appointments, Dr. Rossino noted Plaintiff's *subjective* complaints of liver pain; however that does not mean that she ever concluded that Plaintiff's liver was the source of his pain.  Exhibit B, pp. 88-89.  To the contrary, according to Dr. Rossino, patients with Hepatitis-C do not typically experience pain or other symptoms which is what makes it such a dangerous disease.  Exhibit B, p.99.

During her treatment of Plaintiff, Dr. Rossino documented that Plaintiff had right upper quadrant tenderness on November 9, 2012.  To help with the reported abdominal pain, Dr. Rossino recommended that Plaintiff try to eat a low-fat diet.  Exhibit B, pp. 47-48; 98-99.

Dr. Rossino documented that Plaintiff reported constant right upper quadrant pain worse with food on December 6, 2012.  On December 6, 2012, given the continued reports of abdominal pain, Dr. Rossino ordered a 30-day course of Prilosec for Plaintiff to relieve any symptoms related to stomach acid.  Exhibit B, pp. 54-55; 98-99.  She also continued to encourage a low-fat diet.  Exhibit B, p. 54.  Based on Plaintiff's continued complaint of abdominal pain, Dr. Rossino was concerned about possible gallbladder disease.  Exhibit B, pp. 53-54.  Because of these concerns and Plaintiff's pain complaints, Dr. Rossino ordered an ultrasound.  Exhibit B, pp. 60-61; 98-99.

Dr. Rossino documented that Plaintiff had right abdominal pain in which Plaintiff pointed to his lateral chest and low ribs with no tenderness in his liver on May 16, 2013.  Exhibit B, pp.

83-84. On that same date, Dr. Rossino ordered an x-ray of Plaintiff's chest due to her concern that his complaints could indicate a rib issue. Exhibit B, pp. 87-90; 98-99.

Dr. Rossino documented during Plaintiff's annual physical diffuse tenderness and possible liver enlargement on June 13, 2013. The plan was to see Plaintiff the next week during his chronic care visit. Exhibit, B, pp. 92.

Dr. Rossino prescribed Adderall for Plaintiff in January, 2015 which Plaintiff testified helped with the pain he attributed to his liver. Exhibit A, p. 78.

Plaintiff started experiencing the pain that he believes emanated from his liver in 2010 or 2011, before he was ever in the Lawrence County Jail. Exhibit B, p. 48-49. Before coming to the Lawrence County Jail, he would treat the pain with ibuprofen, Tylenol or Aleve. Exhibit B, p. 49. Before coming to the Lawrence County Jail, Plaintiff never sought treatment from a doctor for this pain that he believes was coming from his liver. Exhibit B, p. 54.

It is anticipated that Plaintiff will argue that Dr. Rossino should have ordered a consistent course of pain medications. This, again, demonstrates that Plaintiff simply disagrees with Dr. Rossino's medical judgment which is not a claim that is cognizable under Section 1983. Furthermore, <u>Plaintiff never requested that Dr. Rossino or anybody else in the Lawrence County Jail provide him with pain medications for his alleged "liver pain."</u> Exhibit B, p. 13; p. 55-57.

There are no pain relief medications that are safe and effective in all settings. Exhibit B, p. 98. There are specific risks that Dr. Rossino recognizes with treating pain complaints with pain relieving medications in patients with Hepatitis-C and Crohn's disease, like Plaintiff. Anti-inflammatory medications can worsen kidney damage that can accompany Hepatitis-C. Exhibit B, p. 97. There are risks with giving Tylenol or an anti-inflammatory which can cause

6

gastrointestinal issues. Exhibit B, p. 98. There can be no dispute that Crohn's disease is a serious gastrointestinal disorder.

Furthermore, Dr. Rossino considered prescribing narcotics a dramatic step and there can be no dispute (and the Court can take judicial notice) that there are serious risks with prescribing narcotics. Exhibit B, p. 99. Accordingly, again, Plaintiff's anticipated disagreement with the lack of pain medications (which he never requested) is a disagreement about Dr. Rossino's medical judgment and not a proper Section 1983 claim.

Furthermore, there were times when Plaintiff received pain medications and they did not seem to give him relief. Exhibit B, p. 98; Exhibit A, p. 57.

Accordingly, there can be no significant dispute that Dr. Rossino did not disregard Plaintiff's pain complaints[4] in light of the undisputed facts that she had numerous office visits with and examined Plaintiff because of his abdominal pain complaints, recommended that Plaintiff try to eat a low fat diet, ordered medications to help control Plaintiff's stomach acid, ordered an abdominal ultrasound, ordered an x-ray of Plaintiff's chest and ribs and Plaintiff was, at times, given pain medications. It is clear that Dr. Rossino chose a course of treatment for Plaintiff's complaints of abdominal pain with which Plaintiff disagrees which the law of the case already recognizes is insufficient to support Plaintiff's claims. Accordingly, summary judgment should be granted in favor of Dr. Rossino.

## II.     STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also *Saldana v.*

---

[4] Again, there is no competent evidence that the alleged pain emanated from Plaintiff's liver or was caused by his Hepatitis-C.

7

*Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" only if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248.

"[U]nsubstantiated arguments made in briefs or at oral argument are not evidence to be considered by" the Court. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993). The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); accord *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. *Celotex*, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. *Anderson*, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also *Matshushita Elect. Indus. Co. v. Zenith Radio Corp.*, 75 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Further, a party may not defeat a motion for summary judgment with evidence that could not be presented

in an admissible form at trial. *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999).

## ARGUMENT

In light of the undisputed, competent testimony in this case, Plaintiff cannot legitimately claim that Dr. Rossino completely ignored or was deliberately indifferent to his complaints. To the contrary, in light of Plaintiff's pain complaints, Dr. Rossino saw him during office visits during which she documented her examinations of him, recommended that Plaintiff try to eat a low fat diet, ordered medications to help control Plaintiff's stomach acid, ordered an abdominal ultrasound, ordered an x-ray of Plaintiff's chest and ribs and, at times, Plaintiff was given pain medications.

Because it is undisputed that Dr. Rossino did address Plaintiff's pain complaints by attempting to determine the cause of those complaints (which was not clear) and in prescribing treatment to treat the symptoms, Plaintiff must be criticizing the medical course chosen by Dr. Rossino claiming that it did not effectively address his pain and that some different treatment should have been provided.

Such a claim is barred by the law of the case as established by this Court's adopted Report and Recommendation issued in connection with the Defendant's Motion to Dismiss. See this Court's Report and Recommendation, p. 7 ("should the evidence point to a dispute over the form of treatment or diagnostic techniques, or a claim of negligence, Defendants will be entitled to the entry of judgment in their favor.") (emphasis added).

Disagreement with the medical judgment of a medical professional is simply insufficient to state a claim under Section 1983. The Supreme Court has established the following standard for a claim for an alleged Eighth Amendment violation in the context of medical care: "(1)

Deliberate indifference on the part of the prison officials; and (2) the prisoner's medical needs must be serious." *Estelle v. Gamble*, 429 U.S. 97 (1976).

The United States Supreme Court and Third Circuit precedent conclusively establish that good faith medical error, negligent misdiagnosis, mere negligence, mistake or difference of opinion do not rise to the level of deliberate indifference. Specifically, claims of negligence or medical malpractice do not constitute deliberate indifference. See *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (emphasis added). In order to survive summary judgment on a theory that a doctor denied constitutionally adequate treatment for pain, a prisoner needs to present evidence that "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). "[D]etermining which medication to prescribe is generally <u>a matter of medical judgment</u>, and [a prisoner is] required to do more than question [a doctor's] medical judgment to overcome a summary judgment ruling on his § 1983 claim." *Monteleone v. Corizon*, 2017 U.S. App. LEXIS 6859 (11th Cir. April 20, 2017) (emphasis added).

For instance, in *Diaz v. Warden Lewisburg United States Penitentiary*, 630 Fed. Appx. 148 (3d. Cir. 2015)[5] despite receiving medical care and medication during his months of incarceration, the Plaintiff claimed that that his condition required more effective medication and this denial of that medication was actionable under §1983. Id. at 151. The Third Circuit Court of Appeals affirmed an order granting summary judgment for the medical professionals holding that "this dispute as to the adequacy of his treatment does not constitute deliberate indifference." Id.

Similarly, in *Pearson v. Prison Health Svcs.*, 850 F.3d 526 (3d. Cir. 2017), the Court affirmed summary judgment in a Section 1983 brought by a prisoner against a doctor for the alleged inadequacy of the treatment provided. Id. at 542. In that case, like this case, there was no dispute that treatment was provided – the doctor prescribed treatment over the phone, ordering observation, antibiotics, and increased intake of fluids and that the defendant doctor eventually performed an examination, collected lab work and scheduled a follow-up appointment. Id. The Court held that because medical treatment was provided and plaintiff provided no extrinsic evidence that would permit a layperson to conclude that the doctor's actions constituted a substantial departure from accepted professional judgment, practice, or standards, "a reasonable jury could not find that he was deliberately indifferent." Id.

In the seminal case, *Estelle v. Gamble*, 429 U.S. 97 (1976), plaintiff prisoner complained about the treatment he received for back pain. Id. at 107. The defendant doctors diagnosed the prisoner's injury as a lower back strain and elected to treat it with bed rest, muscle relaxants, and pain relievers. Id. The prisoner argued that more should have been done by way of diagnosis and treatment, and suggested a number of options that were not pursued. Id. In fact the Fifth Circuit Court of Appeals had agreed suggesting that an x-ray should have been ordered. Id. However,

---

[5] Some of the case law cited in this Brief is from unpublished opinions. Those opinions are not being cited as binding precedent, but rather are being cited for their illustrative value because of the substantially similar factual scenarios

11

the United States Supreme Court reversed and held that the question whether "additional diagnostic techniques or forms of treatment [] is indicated is **a classic example of a matter for medical judgment**."   The Court held that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment" and did not constitute a cognizable action under Section 1983.  Id. at 107-108 (emphasis added).

See also *Cobbs v. Caputo*, 578 F. App'x 84, 85 (3d Cir. 2014) (quoting Estelle, 429 U.S. at 107 for the proposition that "[a] medical decision not to order an X-ray . . . does not represent cruel and unusual punishment. At most it is medical malpractice."); *Ruff v. Health Care Adm'r*, 441 F. App'x 843, 846 (3d Cir. 2011) ("Although it is unfortunate that Ruff's fractured rib went undisclosed for two years, [defendant's] medical choice to not order an x-ray . . . at most exhibits negligence, which is insufficient to state a cognizable Eighth Amendment claim."). See also *Jones v. Vives*, 523 Fed. Appx. 48 (2d Cir. 2013) (medical provider who did not order x-ray of broken hand and instead prescribed pain medication did not exhibit deliberate indifference to medical needs sufficient to establish an Eighth Amendment claim because the decision to order an x-ray was a matter for medical judgment); *Lamar v. Boyd*, 508 Fed. Appx. 711 (10th Cir. 2013) (inmate's §1983 claim was dismissed pursuant to Rule 12(b)(6) where he alleged that nurse practitioner provided treatment but refused his request for an x-ray because such an action could, at best, be characterized as negligent, not deliberately indifferent).; *Barnes v. Johnson*, 204 Fed. Appx. 377 (5th Cir. 2006) (inmate who alleged that doctor did no more than a cursory examination, did not conduct a more thorough examination and did not take x-rays alleged, at most, a medical malpractice claim and did not give rise to a §1983 cause of action because inmate's disagreement with his medical treatment did not establish a constitutional violation); *Blaylock v. Revell*, 2003 U.S. App. LEXIS 28124 (5th Cir. 2003) (per curiam) (prisoner's

allegation that doctors displayed deliberate indifference when they refused to continue him on the pain medication that had been prescribed by another doctor is a classic "disagreement over the type of medical care received, and, therefore, it also does not rise to the level of a constitutional violation"); *Steele v. Choi*, 82 F.3d 175 (7th Cir. 1996) (inmate's allegation that a prison physician misdiagnosed or failed to properly treat the prisoner's illness is insufficient to state a claim under the Eighth Amendment.); *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994) (even repeated acts of alleged negligence cannot, by themselves, constitute deliberate indifference under the Eighth Amendment); *Graves v. Hampton*, 1 F.3d 315 (5th Cir. 1993) (inmate's claim that his Eighth Amendment rights were violated by incompetent medical personnel is a claim for negligence based on mistaken medical treatment or judgment and does not implicate the inmate's Eighth Amendment rights); *Shockley v. Jones*, 823 F.2d 1068 (7th Cir. 1987) (a delay in providing medical equipment to a prisoner did not constitute deliberate indifference for purposes of the Eighth Amendment and Complaint was properly dismissed); *Ayoubi v. Altez*, 2017 U.S. Dist. LEXIS 28124, *18 (N.D. Ill. February 27, 2017) (inmate's claim that defendant doctor should have prescribed pain medication was a "nonstarter" because "Plaintiff's mere disagreement with [the doctor's] course of action cannot amount to deliberate indifference.").

    In this case, Plaintiff Shawn Moore's claims are limited to his complaints about Dr. Rossino's chosen medical course in response to his subjective pain complaints.  There is no reasonable dispute that Plaintiff had a number of medical conditions that could have been the source of his reported abdominal pain and there is no competent evidence that the pain emanated from his liver.  There is no dispute that Dr. Rossino examined Mr. Moore on multiple occasions and noted his pain complaints in the medical records.  There is no dispute that Plaintiff never

requested pain medication from Dr. Rossino. The uncontroverted testimony of Dr. Rossino establishes that she took numerous steps to not only determine the cause of the pain, but also to treat it, including recommending that Plaintiff try to eat a low fat diet, ordering medications to help control Plaintiff's stomach acid, ordering an abdominal ultrasound, ordering an x-ray of Plaintiff's chest and ribs. The Plaintiff's actual complaint in this case centers around his disagreement with the medical course chosen by Dr. Rossino. This is clear because there can be no contention on the record in this case that Dr. Rossino completely disregarded or ignored Mr. Moore or that she was deliberately indifferent to Mr. Moore – the undisputed evidence establishes the exact opposite. As the foregoing binding law from the Untied States Supreme Court and Third Circuit Court of Appeals establishes, a prisoner's disagreement with a doctor's decision to order or not order testing or treatment does not constitute a claim of deliberate indifference under Section 1983.

Because there can be no reasonable dispute that Plaintiff is attempting to backdoor a medical negligence claim in this Section 1983 and there is no evidence of deliberate indifference to Plaintiff's medical needs by Dr. Rossino, summary judgment must be granted.

## **CONCLUSION**

Plaintiff's claim under 42 U.S.C. §1983 is fatally flawed in that the undisputed evidence in this case demonstrates that Dr. Rossino was not deliberately indifferent to Plaintiff's complaints. To the contrary, she saw him on a regular basis and took many medical steps to determine the root cause of Plaintiff's pain complaints and also to treat it. What Plaintiff's claims and argument amount to are disagreements with Dr. Rossino's medical judgment and the chosen medical course. The controlling authority makes clear that such disagreements do not amount to a deliberate indifference claim and the case law supporting summary judgment under the

circumstances in this case are legion. There being no relevant factual dispute and with record being clear in this regard, Dr. Rossino is entitled to judgment as a matter of law.

        Respectfully submitted,

        MARSHALL DENNEHEY
        WARNER COLEMAN & GOGGIN


BY:   *s/ Brett C. Shear*
        TERRY C. CAVANAUGH, ESQUIRE
        PA ID #16702
        BRETT C. SHEAR, ESQUIRE
        PA ID #92244
        ***Attorneys for Defendant, Susen Rossino, M.D.***
        600 Grant Street, Suite 2900
        Pittsburgh, PA 15219
        (412) 803-3461; (412) 803-1188/fax
        tccavanaugh@mdwcg.com
        bcshear@mdwcg.com