## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAWN THOMAS MOORE,                    No. 2:14-cv-00870-DSC-MPK

           Plaintiff,

      v.                                    CIVIL ACTION - LAW


SUSEN ROSSINO, M.D.; BRIAN LUFFEY;      Hon. David S. Cercone
PRIMECARE MEDICAL INC.,

                     Magistrate Judge Maureen P. Kelly


              Defendants.           JURY TRIAL DEMANDED


## REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

AND NOW comes Defendant Susen Rossino, M.D., by and through her attorneys, Terry

C. Cavanaugh, Esquire, Brett C. Shear, Esquire and Marshall Dennehey Warner Coleman &

Goggin, and files the following Reply to Plaintiff's Brief in Opposition to Motion for Summary

Judgment, stating as follows:

### I.       INTRODUCTION


Plaintiff cannot and does not dispute the relevant facts relating to his only claims in this

case – alleged deliberate indifference to his pain complaints.  As set forth in Defendant's original

Memorandum and Concise Statement, Plaintiff had been complaining of abdominal pain since

well before he ever saw Dr. Rossino and other medical professionals suggested causes other than

the liver, such as symptoms related to his Crohn's Disease and right-sided diverticulosis.  During

certain medical appointments, Dr. Rossino documented Plaintiff's pain complaints.

There is no dispute of fact[1] that Dr. Rossino did not disregard Plaintiff's pain complaints in light of the undisputed facts that she had numerous office visits with and examined Plaintiff because of his abdominal pain complaints, recommended that Plaintiff try to eat a low fat diet, ordered medications to help control Plaintiff's stomach acid, ordered an abdominal ultrasound, ordered an x-ray of Plaintiff's chest and ribs and gave Plaintiff medications.  It is clear that Dr. Rossino chose a course of treatment for Plaintiff's complaints of abdominal pain with which Plaintiff disagrees.  Instead of the course chosen, Plaintiff believes that Dr. Rossino should have ordered some unidentified pain medication despite the undisputed fact that Plaintiff does not even have any evidence that he requested pain medication.  Again, this demonstrates that Plaintiff's claim is merely based on his disagreement with the medical course chosen by Dr. Rossino.  Plaintiff now believes that Dr. Rossino should have chosen a different medical course than she did.  The law is clear that Plaintiff does not state a Section 1983 claim by establishing his disagreement with the medical judgment of a doctor.  Section 1983 does not represent an intent to federalize state tort law medical malpractice claims.

Plaintiff's Brief in Opposition also contains numerous misstatements of the record in this case.[2]

----

[1] Plaintiff's speculation as to Dr. Rossino's intent in providing the treatment that she did is not evidence.

[2] Defendant will attempt to keep this factual discussion brief and directed to the facts alleged in Plaintiff's Brief. Plaintiff has filed hundreds of paragraphs in his "Concise" Statement and Verified Statement which contain irrelevant material, inadmissible evidence, Plaintiff's improper and unprofessional accusations and unfounded conspiracy theories.  *See* e.g. Plaintiff's Concise Statement No. 183 in which Plaintiff states "After Plaintiff had been recommended treatment, his criminal trial was suddenly bumped up by six months and was brought to trial in May of 2015."  Apparently Plaintiff and his lawyer (who signed the Statement) are implying that the Lawrence County Court of Common Pleas was improperly influenced to the detriment of Plaintiff's criminal rights by Primecare and/or Dr. Rossino.  Such unfounded and unprofessional accusations have no place in this proceeding.  *See also* Plaintiff's Brief, p. 3 wherein Plaintiff's counsel asserts that Dr. Rossino's testimony about her care contained "post-hoc justifications" for her decisions and Plaintiff's Verified Statement, No. 55 wherein he alleges that a statement by Dr. Rossino was one of her "many statements from her deposition that she was coached into saying so it could be put forth in a 'Statement of Concise Facts' that is anything but fact."  Plaintiff and his lawyer have essentially,

Plaintiff continues to insist that his pain must be have been related to his liver and Hepatitis-C. However, he has continually failed to adduce any evidence to support that contention. Plaintiff's report from Joseph Harris, M.D. (who, unlike Dr. Rossino, has never laid eyes or hands on Plaintiff) which was attached to his Brief even concedes that a mere "*likely etiology*" for his pain would be Hepatitis-C and another contributing factor may be Plaintiff's history as a intravenous drug user. At best, Dr. Harris states that it is his opinion that the pain could have been caused by Hepatitis-C.

Plaintiff takes issue with Defendant's argument that Plaintiff never asked Dr. Rossino for pain medication. That position is disingenuous. First, it is true that Plaintiff stated in his deposition that he does not recall whether he specifically asked Dr. Rossino for pain medication, but then went into a lengthy excuse for why he would not have asked her for pain medication. See deposition of Plaintiff, Exhibit B to Defendant's original Memorandum, pp. 55-56. In any event, and more importantly, it is Plaintiff's burden to adduce evidence of his claims and Plaintiff has pointed to no evidence of record from which the jury could conclude that he asked and Dr. Rossino refused to give him pain medication. Essentially, Plaintiff asserts that Dr. Rossino should have ordered some unidentified pain medications for him (i.e. a different medical course) that he did not request without any authority suggesting that Dr. Rossino had a duty to do so.

Plaintiff misleadingly states that Dr. Rossino "did not review" inmate grievances or medical request slips. See Plaintiff's Brief, p. 1. Contrary to this misstatement, inmate grievances that were submitted to the Jail and the medical request slips that were submitted to Primecare were not given to Dr. Rossino. Deposition of Dr. Rossino, Exhibit A to Defendant's

---

without evidence, accused Dr. Rossino of committing perjury and her attorney of suborning perjury. These are utterly untrue and unprofessional allegations which, also, have no place in this proceeding.

original Memorandum, p. 50, 64.  There is no evidence to the contrary and there is no evidence

that Dr. Rossino had any supervisory authority over Primecare or Jail employees.  Plaintiff chose

to dismiss his claims against Primecare and its agents and never sued the Jail and cannot now

complain about what those individuals and entities did or did not provide to Dr. Rossino.

Plaintiff's arguments and statements regarding his grievances and medical request slips are

irrelevant because those were provided to the Jail and Primecare Medical, Inc. respectively and

there is no evidence they were provided to Dr. Rossino.  The Jail and Primecare are not

defendants in this case.[3]

Similarly, Plaintiff disputes that Dr. Connelly ordered the liver biopsy and fibrosis

scoring while, at the same time, acknowledging that Dr. Connelly ordered the liver biopsy and

fibrosis scoring allegedly because Primecare required it.   *See* Plaintiff's Concise Statement of

Material Facts, 170-182.  As stated in this Defendant's prior filings, she has no input into

Primecare policies and there is no evidence suggesting that she does.[4]  Whether Dr. Connelly

ordered the liver biopsy or fibrosis scoring on his own or at Primecare's insistence is irrelevant to

the claims against Dr. Rossino.  Plaintiff has admitted that, at Primecare's insistence, Dr.

Connelly could not start any medication until that testing was done.  Plaintiff refused to have that

testing done and, therefore, he did not receive medication.  If he has complaints about

---

[3] Many of the complaints that Plaintiff makes in his Concise Statement of Facts and Verified Statements are directed to other individuals and entities other than Dr. Rossino evidencing that Plaintiff is using this litigation is generally air his grievances with his confinement, which is not appropriate and Dr. Rossino should not be forced to respond to these irrelevancies.

[4]  Plaintiff's current doctor, Joseph Harris, M.D., in his consultation report attached as an exhibit to Plaintiff's Brief states that Dr. Rossino "defended the Primecare protocol" and states that the Primecare Protocol is "outdated."  First, Dr. Rossino never "defended" the Primecare protocol – the evidence is undisputed that she is not a liver specialist. Furthermore, Dr. Harris's reference to the "current" Primecare protocol is puzzling in that this case involves the protocol that existed in 2015 and prior.  One has to wonder what information was provided or not provided to Dr. Harris (Dr. Rossino's name is not even spelled correctly in Dr. Harris's report).

Primecare's policy or Dr. Connelly's care, those claims should have been directed to them.  There is no allegation or evidence that Dr. Rossino has any responsibility for their actions or decisions.[5]

In his Brief, Plaintiff argues that Dr. Rossino "treated Plaintiff with narcotics for his ADHD."  There is no evidence cited of Plaintiff receiving a narcotic medication from Dr. Rossino for ADHD.  Narcotic medications are not used to treat ADHD, but are powerful opioid pain medications such as morphine, hydrocodone and fentanyl.  Plaintiff has adduced no evidence that he was prescribed narcotics by Dr. Rossino.

Plaintiff's misrepresentations of the facts and failure to support his claims with applicable authority, as set forth below, further demonstrate that Dr. Rossino is entitled to summary judgment.

## II.  PLAINTIFF IS PURSUING A CLAIM EXPRESSING DISSATISFACTION WITH THE TREATMENT OF HIS HEPATITIS C

### A.  Plaintiff's Argument is Contrary to the Court's Prior Order

As predicted in Dr. Rossino's original Brief, Plaintiff is actually pursuing a claim relating to the treatment of his Hepatitis C.  See, e.g. Plaintiff's Brief, p. 3, 5-11.  In essence Plaintiff and his lawyer are attempting to re-litigate an issue that was already decided by the Court.  On the very first page of the Court's Report and Recommendation regarding this Defendant's Motion to Dismiss, the Court held as follows:

---

[5] Interestingly, Dr. Harris in his consultation report attached as an exhibit to Plaintiff's Brief states that "evaluation of liver status with Fibro-Sure, liver biopsy or elastography is urgently needed."  Two of these are the very tests that were ordered by Dr. Connelly and that Plaintiff refused to have done in 2015.  There is no dispute that his refusal caused <u>Primecare</u> to deny  him from receiving Hepatitis-C medication.

Plaintiff's Second Amended Complaint **alleges his disagreement with the course of treatment for his Hepatitis-C, which this Court agrees is not sufficient to sustain a claim upon which relief may be granted**.

Report and Recommendation regarding Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, p. 1 (dkt 39) (emphasis added).  That Report and Recommendation was adopted as the Opinion of the Court by the Honorable David Stewart Cercone on June 1, 2015 with the exception of footnote one.  Accordingly, the above language was adopted as the Opinion of the Court and, therefore, the Court held that Plaintiff disagreement with the course of treatment for Hepatitis-C does not state a claim upon which relief can be granted.  Plaintiff's argument to the contrary simply ignores the Court's clear ruling.[6]

## B.  Plaintiff's Argument is Contrary to the Positions He Has Taken Throughout This Litigation

In addition to being contrary to the Court's ruling, Plaintiff's position is the exact opposite of what he has admitted in his prior filings.  For example, on June 10, 2016, he filed an Ex Parte Motion to Dismiss Brian Luffey and Primecare Medical, Inc. as Defendants (dkt. 91).  In that Motion, Plaintiff admitted that this Court's Report and Recommendation "dismissed Plaintiff's claim for nontreatment of his Hepatitis C and allowed his claim for nontreatment of pain to proceed against all defendnats (sic)."[7]  See also Deposition of Shawn Moore, pp. 38-39, attached hereto as Exhibit P, wherein he acknowledged that his claims were limited to his allegations of failure to treat his pain; Plaintiff's Answers to Primecare's Interrogatories, No. 4, attached hereto as Exhibit Q ("The portion of the case that remains was untreated pain I suffered from for approximately 2 1/2 years because of defendants indifference to my care. What may or may not

---

[6] The parties have litigated this entire case on the understanding that Plaintiff's claims were limited to his allegations of a failure to treat his pain and that Plaintiff's claims relating to the treatment of his Hepatitis-C have been dismissed.

have led to my pain is not at issue in this portion of the case, if the Hepatitis C portion of the case was not dismissed I would go into it's causes, so I respectfully object to this portion of the question as irrelevant and not likely to lead to evidence to be introduced at trial").

This Defendant did not oppose Plaintiff's Motion to Dismiss the other Defendants because Plaintiff had acknowledged that his claims were strictly limited to his pain complaints and that his claims related to treatment of Hepatitis-C were dismissed.  Otherwise, the Motion would have been opposed for obvious reasons – <u>Primecare is the entity that determines the Hepatitis-C treatment protocol and decides whether Plaintiff ultimately gets treatment for Hepatitis-C.</u>

In addition to being contrary to the Court's prior ruling, Plaintiff's new position that he can still pursue claims relating to the treatment of his Hepatitis-C is estopped because he has taken one position earlier in this litigation to get his desired ruling (dismissal of the other Defendants and objecting to discovery) and now takes the opposite position in order to avoid summary judgment. In *New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808; 149 L. Ed. 2d 968 (2001), the Supreme Court held that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." <u>Id.</u> at 749.  That is precisely what Plaintiff must be barred from doing here.

**C.  Plaintiff's argument is belied by the Primecare Hepatitis-C Protocol on which Plaintiff relies**

Plaintiff's claim relating to the treatment of his Hepatitis-C (which has been dismissed) relies on Dr. Rossino's alleged failure to follow the Primecare Medical, Inc. protocol for the treatment of Hepatitis-C.  See Plaintiff's Brief, pp. 6-11.  Plaintiff has adduced no evidence that Dr. Rossino developed, had input into or had the ability to unilaterally disregard that Protocol.

Plaintiff and his counsel, despite not taking a single Primecare deposition[8],  would like the Court to take their (faulty) interpretation of the Protocol as evidence when those interpretations are clearly not admissible evidence.

Plaintiff argues that under the Protocol his ALT levels were elevated for two out of three tests which warranted an RNA assay.  Dr. Rossino testified that the Protocol did not require, *but only gave her the option of*, ordering that assay.  Exhibit B, p. 41.[9]  Regardless, if that RNA assay is positive, the Protocol further states:  "evaluate for contraindications for treatment." Listed under the "**absolute** contraindications for treatment" in the Protocol is a "Prison Sentence < Time for work-up and treatment (typically 18 months)."  <u>See</u> Exhibit N, p. 4 to Defendant's original Memorandum of Law.

There is no dispute that this case involves a time period when Plaintiff was a pretrial detainee, i.e. he had not yet even been sentenced.  See Plaintiff's Brief, p. 1 where Plaintiff's counsel acknowledges that "At all times relevant, Plaintiff was a pretrial detainee at the

---

[8] Plaintiff chose not to take any such deposition despite being granted months of additional time to conduct discovery after the entry of his appearance (over the objection of Defendant)

[9] Although Plaintiff offers a differing interpretation of the Protocol, he admits that the Primecare Administrator stated that "2 lab results is not persistent."  *See* Plaintiff's Concise Statement of Material Facts, No. 34.  This demonstrates that Primecare interpreted its own protocol similarly to Dr Rossino.  As set forth throughout this Reply, it is clear that Plaintiff is dissatisfied with Primecare, but those claims are not cognizable in a Section 1983 claim against Dr. Rossino.

Lawrence County Jail where he was incarcerated from June 2012 until May of 2015."  Plaintiff was not sentenced until May 7, 2015 and, therefore, further workup and treatment was <u>absolutely contraindicated</u> under the Primecare Protocol while he was a pretrial detainee in the Lawrence County Jail and under the care of Dr. Rossino.  Accordingly, even if Dr. Rossino did what Plaintiff wanted her to do, i.e. ordered an RNA assay (more testing) in response to his ALT levels being elevated for two out of three months, there <u>would be no treatment permitted by the Primecare Protocol</u> regardless of the results of that additional testing because his prison sentence was unknown at that time.

Therefore, even if Plaintiff could theoretically pursue a claim complaining of Dr. Rossino's course of treatment of his Hepatitis-C (which he cannot), that claim is entirely reliant on Dr. Rossino following the Primecare Hepatitis-C protocol which states that treatment is *absolutely* contraindicated when the prison sentence (Plaintiff had not been sentenced) is less than the time for the treatment.  As set forth above, his real complaint is about the protocol itself which is not a claim that can be asserted against Dr. Rossino.

Tellingly, this argument was set forth in Defendant's original Memorandum and Plaintiff <u>failed to respond</u> to it to explain how he believes that he can get around the absolute contraindication set forth in the protocol.  The answer is that he cannot because there is no dispute that Plaintiff had not been sentenced during the time that Dr. Rossino treated him and, therefore, the protocol did no provide for Plaintiff to receive treatment.[10]

---

[10] Interestingly, Plaintiff admits that he still has not been treated for his Hepatitis C after leaving the Lawrence County Jail in 2015.  See Plaintiff's Verified Statement, No 73.  The fact that other doctors have seen Plaintiff and have not immediately referred him to treatment shows that Dr. Rossino was not "reckless" or "deliberately indifferent" in choosing to initially test and monitor Plaintiff's liver function.

### III.   PLAINTIFF HAS FAILED TO ADDUCE ANY EVIDENCE SUPPORTING A CLAIM OF ALLEGED DELIBERATE INDIFFERENCE TO HIS PAIN COMPLAINTS

Equally telling is Plaintiff's misstatement of the facts and citation to inapposite case law in order to avoid the inevitable conclusion that the admissible evidence in this case, even if it is viewed in a light most favorable to the Plaintiff, does not establish a claim of deliberate indifference under Section 1983.[11]   At best, Plaintiff has alleged his dissatisfaction with the medical course chosen by Dr. Rossino in response to Plaintiff's subjective complaints of abdominal pain, i.e. he disagrees with her choice of treating Plaintiff by encouraging a low fat diet, medications to help control Plaintiff's stomach acid, abdominal ultrasound and x-ray of Plaintiff's chest and ribs.  However, "[a] prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference." *Soto-Muniz v. Corizon, Inc.*, 2015 U.S. Dist. LEXIS 28765 (D. N.J. 2015) (citing *Peterson v. Davis*, 551 F.Supp. 137, 145 (D. Md. 1982).[12]   Similarly, it is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d  Cir. 1990). "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Fantone v. Herbik*, 528 Fed. App'x 123,

---

[11] Plaintiff's "Concise" Statement of Facts contains numerous misrepresentations and, more importantly, hearsay, speculation and other inadmissible evidence which cannot be relied upon to avoid summary judgment.  See, e.g., Plaintiff's Concise Statement of Material Facts, Nos. 54, 60-61 (alleged statements made and intent of a nurse who was never deposed); 65 (Plaintiff's speculation about Dr. Rossino's alleged intent); 74-75 (Plaintiff's speculation about the alleged intent of an LPN who was never deposed); 88, 109 (Plaintiff's speculation about what Dr. Rossino ostensibly "knew"); 162-167,  (alleged oral statements by Dr. Connelly which are not contained in the medical records)   .  Furthermore, many of the statements in Plaintiff's Concise Statement of Facts completely fail to cite to any evidence in the record.  Finally, many of the statements in Plaintiff's "Concise" Statement are not factual in nature whatsoever.  Based on the foregoing, the Concise Statement should be stricken and disregarded.

[12] Plaintiff has  suggested that *Kingley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466 (2015) provides some different standard for a Fourteenth Amendment claim for deliberate indifference to a pretrial detainee's medical needs.  *Kingsley* was not even a medical case; rather it involved a pretrial detainee's claim of excessive force.  The Third Circuit Court of Appeals has held that claims for deliberate indifference under the Eighth and Fourteenth Amendment are analyzed under similar standards.  See *Parkell v. Morgan*, 682 Fed. Appx. 155 (3d. Cir. 2017).

125 (3d Cir. 2013) (citing *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575, n. 2 (3d Cir. 1979).  <u>See</u> <u>also</u> *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)(holding that "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment which  remains a question of sound professional judgment"). Similarly, "if a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor.  There may, for example, be several acceptable ways to treat an illness." *White*, 897 F.2 d at 110.

Plaintiff cites to *Soto-Muniz*, *supra*,[13] which actually is helpful to Defendant's position and further demonstrates why Dr. Rossino is entitled to summary judgment.  In that case, plaintiff prisoner suffered from ulcerative colitis and was seen in prison by defendant doctor.  <u>Id.</u> at *3-5.  When the defendant doctor first saw plaintiff, he appeared chronically ill and had tenderness in his abdomen.  <u>Id.</u> at *7.  Plaintiff was given the medications Prednisone along with Prilosec, and Vicodin, but defendant did not give Plaintiff Remicade, one of the medications used to medically control ulcerative colitis.  <u>Id.</u> at *7-8.  Defendant chose to order oral hydration rather than intravenous.  <u>Id.</u> at *8.  The defendant also requested a GI consult.  <u>Id.</u>

The next time defendant doctor saw plaintiff, he noted complaints of fatigue and malaise, with diarrhea, abdominal pain, and melena.  <u>Id.</u> at *11-12.  Defendant ordered the discharge of plaintiff to general population, and he ordered lab testing and, again, a GI consult.  <u>Id.</u>  at *12.

---

[13] The language quoted on page 12 of Plaintiff's Brief that is attributed to *Soto-Muniz* does not appear in that opinion.  The quoted language also claims that the holding of *Peralta v. Dillard*, 704 F.3d 1124 (9th Cir. 2013) was "inmate established question for jury regarding claim of deliberate indifference where he suffered chronic dental pain, prison officials were aware of his complaint, and failed to properly treat condition."  This is a <u>complete</u> <u>misrepresentation</u> of *Peralta* which was a review and affirmance of judgments in favor of defendant dentists.  The Court in that case <u>never held</u> that a jury question is created in a Section 1983 case where it is claimed that the prisoner did not receive "proper treatment" which as set forth elsewhere in this Reply is a contrary to the well-established law.

The defendant doctor again saw plaintiff after he was transferred back to the infirmary, and noted that Plaintiff complained of anorexia, weight loss, abdominal pain, and hematochezia. Id. at *14.  Plaintiff was chronically ill appearing, but was in no apparent distress. Id.  Because the defendant doctor did not find anything acute that warranted him to be in the infirmary, and noted that plaintiff's weight was stable and his blood pressure was good, plaintiff was again discharged to general population.  Id. at *14-15.

Plaintiff asserted a claim under Section 1983 claiming that the medical decisions made by defendant doctor were knowingly inadequate.  Id. at *18.  In support of his claims, he offered an expert report from a doctor who opined that the medical care was not only delayed, but also inadequate based on the severity of his known disease.  Id.  That expert offered criticisms of the defendant's failure to treat plaintiff's dehydration without intravenous fluid and an IV, improper medication being given to plaintiff, no GI consultation being performed, no acknowledgment by medical staff of plaintiff's medical signs indicating severe dehydration and delay in care on multiple occasions.  Id.

Defendant doctor filed a motion for summary judgment arguing that plaintiff failed to establish that the doctor in responding to plaintiff's medical needs was objectively indifferent. Id. at *34.  The Court held that "[i]t is undisputed that Plaintiff received some form of treatment while at SWSP.  Any dispute concerning the adequacy of Plaintiff's treatment sounds in negligence, as Plaintiff has failed to adduce any evidence tending to show [defendant's] subjective indifference in making treatment decisions." Id. at *35.  The Court held that plaintiff had not shown that defendant doctor lacked the knowledge, training, or experience to make informed medical judgments.  Id.  Furthermore, plaintiff's expert's differing opinions regarding

the necessity of a different treatment course did not state a 1983 claim.  Id. at *37.  In granting

summary judgment, the Court held as follows:

> What the Court is left with is a genuine dispute over the adequacy of Plaintiff's treatment, but not a dispute over whether Plaintiff was in fact treated by [defendant doctor], or whether [defendant doctor] exercised his informed, professional judgment in making treatment decisions for Plaintiff. This is insufficient to sustain Plaintiff's claim. **Eighth Amendment liability under § 1983 requires "more than ordinary lack of due care for the prisoner's interests or safety**." Here, the record does not indicate that [defendant doctor] showed "deliberate indifference to Plaintiff's serious medical needs."

Id. at *40 (emphasis added and internal citations omitted).

The District Court's decision in *Soto-Muniz* was affirmed by the Third Circuit Court of

Appeals.  665 Fed. Appx. 226 (3d Cir. 2016).  The Third Circuit held that plaintiff relied on his

expert to support his claims, but that the expert opinion "**at most raises an issue of fact as to**

**whether [defendant doctor] may have been negligent. It is not evidence that he consciously**

**disregarded a serious risk**."  Id. at 229 (emphasis added).

The *Soto-Muniz* case demonstrates precisely why Dr. Rossino is entitled to summary

judgment.  Like the plaintiff in that case, the Plaintiff here does not dispute that Dr. Rossino

provided him with treatment in response to his complaints.  What he is asserting, like the

plaintiff in *Soto-Muniz*, is that the care provided was inadequate and that he was not given proper

medications.  However, the law is abundantly clear, as appropriately held in *Soto-Muniz*, that

criticisms of the adequacy of medical care, even where supported by medical expert opinion, is

simply not adequate to maintain a Section 1983 claim.  Here, Dr. Rossino exercised her informed

medical judgment and, like in *Soto-Muniz*, Plaintiff has not offered any evidence whatsoever

suggesting that Dr. Rossino lacked the knowledge, training, or experience to make informed

medical judgments.  Accordingly, for the same reasons as set forth in *Soto-Muniz*, Dr. Rossino is

entitled to summary judgment.  See also *Pearson v. Prison Health Serv.*, 850 F.3d 526, 539 (3d Cir. 2017) (where nurse did not refuse to see plaintiff but examined him, diagnosed him with a pulled muscle, and decided not to elevate his condition based on *her opinion* that it was not severe, she was entitled to summary judgment on plaintiff's Eighth Amendment claim because "a complaint that a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment").

The other cases cited in Plaintiff's Brief are completely distinguishable from this matter. Plaintiff argues that *Johnson v. Caputo*, 2013 U.S. Dist. LEXIS 83380 (E.D. Pa. 2013) stands for the proposition that there were genuine issues of fact as to the failure to provide pain medications.  Plaintiff's Brief, p. 12.  However, Plaintiff fails to inform the Court that *Johnson* was at the motion to dismiss stage and involved a prisoner's allegation that defendant prison officials withheld pain medications that were prescribed for him by an outside doctor.  Id.  at *20.  The facts of that case simply have no application here where Plaintiff here was not prescribed any pain medications and the claim is that Dr. Rossino should have followed a different medical course.  *See also* the other cases cited in Plaintiff's Brief which are all factually distinguishable:  *Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990) (claim of prison guard's intentional delay in allowing treatment of prisoner's broken foot); *Washington v. Dugger*, 860 F.2d 1018 (11th Cir. 1988) (claim that prison officials discarded and refused to provide medicine and medical appliances prescribed by an outside doctor); *Aldridge v. Montgomery*, 753 F.2d 970 (11th Cir. 1985) (claim against the doctor was that plaintiff requested to see him for severe headaches and dizziness and the doctor refused to examine or treat plaintiff); *Ralston v. McGovern*, 167 F.3d 1160 (7th Cir. 1999) (claim against prison guard alleging that guard failed to provide him with pain medication prescribed by prison doctor); *Boretti v. Wiscomb*. 930 F.2d

1150 (6th Cir. 1991) (claim by prisoner against a nurse alleging that after several direct requests, she <u>refused too see or treat him</u> and refused to provide him with pain medications <u>that had been prescribed for him</u>).

The case law is unwavering in its support of latitude in medical decision-making.  The cases cited by Plaintiff are all factually distinguishable to the facts of this case.  There is no dispute that Dr. Rossino used her medical judgment to pursue a medical course with which Plaintiff disagrees.  That simply does not state a claim under Section 1983.  There are no relevant issues of material fact that are in dispute with respect to these matters.  There is no dispute that when Plaintiff complained of pain,  Dr. Rossino did not disregard him, she examined Plaintiff at numerous office visits because of his abdominal pain complaints, recommended that Plaintiff try to eat a low fat diet, ordered medications to help control Plaintiff's stomach acid, ordered an abdominal ultrasound and ordered an x-ray of Plaintiff's chest and ribs.  Plaintiff believes that she should have done something different to treat his pain.  The above case law establishes that such a claim, at best, is for medical negligence, not deliberate indifference under Section 1983.

## IV.    CONCLUSION

Based on the foregoing and as set forth in her original Memorandum, Dr. Rossino is entitled to summary judgment.  Plaintiff's claims relating to his complaints about the treatment rendered relating to his Hepatitis-C have already been dismissed.  Plaintiff's attempts to revive them have no basis in the law.

As to Plaintiff's remaining claims relating to the treatment of pain, there is no dispute that Dr. Rossino saw and examined Plaintiff multiple times for his complaints and exercised her

professional judgment to chose a medical course to help treat his pain. Plaintiff merely disagrees with her medical judgment and believes that she should have done something different. The binding precedent from both the United States Supreme Court and the Third Circuit Court of Appeals establishes, without question, that disagreements with the medical judgment of a qualified medical professional do not establish a claim for deliberate indifferent under Section 1983. Accordingly, the law unequivocally provides that Dr. Rossino is entitled to summary judgment and Plaintiff's claims must be dismissed with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN**

BY: _s/ Brett C. Shear_
TERRY C. CAVANAUGH, ESQUIRE
PA I.D. #16702
BRETT C. SHEAR, ESQUIRE
PA I.D. #92244
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA  15219
(412) 803-1140  // (412) 803-1188 fax
tccavanaugh@mdwcg.com
**Counsel for Susen Rossino, M.D.**