IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAWN THOMAS MOORE,                    )
                                       )
                    Plaintiff,         )    Civil Action No. 14-870
                                       )
        v.                             )    District Judge David S. Cercone
                                       )    Chief Magistrate Judge Maureen P. Kelly
SUSEN ROSSINO, M.D.,                   )
                                       )    Re: ECF No. 155
                    Defendant.         )

## REPORT AND RECOMMENDATION

### I.      RECOMMMENDATION

Presently before the Court is the Motion for Summary Judgment filed on behalf of Susen Rossino, M.D. ("Defendant" or "Dr. Rossino") pursuant to Federal Rule of Civil Procedure 56(a).  ECF No. 155.  Defendant seeks judgment as a matter of law as to all claims asserted in the Second Amended Complaint, ECF No. 20, filed by Shawn Thomas Moore ("Plaintiff").  In the operative Complaint, Plaintiff asserts claims for alleged violations of his rights under the Fourteenth Amendment to the Constitution of the United States resulting from Defendant's deliberate indifference to his medical needs.  For the reasons that follow, it is respectfully recommended the Motion for Summary Judgment be granted.

### II.     REPORT

#### A.      FACTUAL BACKGROUND

Plaintiff was incarcerated as a pretrial detainee at the Lawrence County Jail ("the Jail") in New Castle, Pennsylvania, from June 14, 2012, through May 22, 2015.  ECF No. 158 ¶ 1. During this period of time, Dr. Rossino was under contract with PrimeCare Medical, Inc.

("PrimeCare")[1], to provide physician services for the Jail. Id. ¶ 3. Dr. Rossino specializes in family medicine and primary care, and maintains her own private practice with Cornerstone Family Practice as well as contracts for physician services with other institutions. ECF Nos. 158 ¶¶ 3, 19; 162-1 at 5. Her schedule was arranged such that she would typically visit the Jail and see patients on Thursdays. ECF No. 158 ¶ 4. On rare occasions, she would appear at the Jail on other days. Id.

Plaintiff was diagnosed with Hepatitis C in 1996. Id. ¶ 2. Plaintiff had regular visits with Dr. Rossino, and was seen at least every three months for chronic care of his Hepatitis C. Id. ¶ 5. Dr. Rossino did not provide Plaintiff with any medications for Hepatitis C; however, she ordered periodic blood tests for purposes of monitoring his liver enzyme levels. Id. ¶¶ 6, 11. She looked at both his AST and ALT enzyme levels, per PrimeCare's protocol for Hepatitis C management. Id. ¶¶ 11, 21. Depending upon the results of these blood tests, the protocol would advise taking further action, including recommending a consultation with a specialist. Under the protocol, only a specialist could prescribe medication for Hepatitis C. Id. ¶¶ 6, 16.

Aside from having regularly scheduled visits with Dr. Rossino, Plaintiff was able to request more frequent examinations by completing a "Sick Call Slip" or "Medical Request Slip." Id. ¶ 7.

### 1.     Plaintiff's treatment history

Medical records from the Jail show that Plaintiff's AST and ALT levels were elevated in his first two blood tests on August 14, 2012, and October 30, 2012. ECF Nos. 158 ¶ 22; 162-2 at 31. Around this time, Plaintiff also claimed that he experienced pain emanating from his liver. ECF No. 158 ¶ 8. On November 1, 2012, Plaintiff completed a Sick Call/Medical Request slip

---

[1] Plaintiff's Second Amended Complaint initially included claims against PrimeCare Medical, Inc., and PrimeCare administrator Brian Luffey. These parties were voluntarily dismissed. ECF No. 92.

in which he alleged that "I'm still having pain in my liver area – I have hepatitis C – this is the second slip I've put in because the pain is consistent and getting worse." Id. ¶ 17. Dr. Rossino's notes from a visit with Plaintiff on November 9, 2012, reflect these complaints, recording that his "liver hurts at times in past year, worse in past few [months.]" Id. ¶ 23. While he did not appear to be in any distress at the time, physical examination of the abdomen revealed mild right upper quadrant tenderness. ECF No. 161-1 at 39-40.

On November 29, 2012, Plaintiff filed a Sick Call/Medical Request slip and reported that he had "stabbing pain in liver along with general pain in that area." ECF No. 162-2 at 35. At an examination on December 6, 2012, Dr. Rossino evaluated Plaintiff and noted complaints of constant right upper quadrant pain and nausea, which worsened when eating. Id. at 40. Dr. Rossino concluded that there could be an issue with Plaintiff's gallbladder. Id. at 55. She prescribed Prilosec and told Plaintiff to eat a low-fat diet. Id. Hepatitis C bloodwork was ordered. Id. On December 11, 2012, an ultrasound was also ordered. ECF No. 161 at 73.

Plaintiff submitted a Sick Call/Medical Request slip on January 28, 2013, claiming that, "I am still having pain in the area of my liver, it has not gone away. You need to treat me for my HCV." ECF Nos. 158 ¶ 18; 162-2 at 34. However, Dr. Rossino's medical notes from February 7, 2013, show that Plaintiff did not appear to be in distress and did not complain of abdominal pain. ECF No. 161 at 99. Physical examination revealed a soft, non-tender abdomen. ECF No. 161-1 at 2. Dr. Rossino ordered follow-up blood work for Plaintiff's Hepatitis C. ECF No. 162-2 at 61. Similarly, during an appointment on April 25, 2013, Plaintiff was in no distress, did not complain of abdominal pain, and had a soft, non-tender abdomen. ECF No. 161-1 at 7-12.

In a Sick Call/Medical Request slip dated May 12, 2013, Plaintiff complained of "increased severe pain in my liver – It is constantly in pain and hurting." ECF No. 162-2 at 36.

Dr. Rossino's medical notes from May 16, 2013, indicate that Plaintiff was complaining of worsening right abdominal pain, and pointed to his right lateral lower ribs. Id. at 42. During physical examination, Plaintiff did not appear to be in distress, and his abdomen was soft and non-tender. ECF No. 161-1 at 17-18. Dr. Rossino consequently ordered an x-ray of Plaintiff's right chest to examine his ribs. ECF No. 162-2 at 61, 69. The results of the x-ray showed no injury or other abnormality. Id. at 62.

During an appointment on June 13, 2013, Dr. Rossino documented "mild diffuse tenderness" and "possible liver enlargement." ECF Nos. 158 ¶ 9; 162-2 at 64. However, Plaintiff was not observed to be in any distress; he was to return to see her the following week for further evaluation of his liver-related complaints. ECF No. 162-2 at 63, 65. Plaintiff returned on June 20, 2013, and reported abdominal pain in his right upper quadrant, but no nausea or vomiting. Id. at 66-68. Dr. Rossino recorded that Plaintiff did not appear to be in any distress, but did not report whether there was any tenderness discovered during physical examination of his abdomen. ECF No. 161-1 at 31-32. Dr. Rossino ordered additional blood work in three months, and advised Plaintiff to eat a low fat diet. ECF No. 162-2 at 69. Dr. Rossino noted that Plaintiff was upset that he was not receiving medication to treat his Hepatitis C, and indicated that she would seek to obtain a copy of past medical records that Plaintiff asserted recommended such treatment. Id.

At Plaintiff's next visit with Dr. Rossino on September 19, 2013, it was observed that Plaintiff was in no distress and that his abdomen was soft and non-tender. ECF No. 161-1 at 45-47. He made no complaints of abdominal pain. Id. at 45. Dr. Rossino ordered additional blood work in three months. Id. at 49. At his December 19, 2013, appointment, Plaintiff did not express any indication of pain emanating from his liver. Id. at 51-52. He appeared to be in no

4

distress, and his abdomen was soft and non-tender.  Id. at 53-54.  Bloodwork was ordered as usual.  Id. at 56.

On March 13, 2014, Plaintiff appeared before Dr. Rossino in no distress and with no complaints of abdominal pain.  Id. at 58-60.  Physical examination of the abdomen revealed no tenderness.  Id. at 61.  Dr. Rossino made the same findings at Plaintiff's examination on May 29, 2014.  Id. at 67-68, 72-73.  However, by August 28, 2014, Plaintiff was again claiming that his liver was tender.  Id. at 77, 79.  Dr. Rossino did not observe Plaintiff to be in any distress, but did not indicate if examination of his abdomen resulted in discovery of tenderness.  Id. at 79.  A follow-up visit was ordered.

On December 8, 2014, a Hepatitis C RNA assay revealed that Plaintiff's viral load was 1,041,184.  ECF No. 162-2 at 32.  Dr. Rossino referred Plaintiff to a specialist for assessment of his Hepatitis C.  Id. at 72.  At his regularly scheduled examination on December 18, 2014, Dr. Rossino recorded that she and Plaintiff discussed the results of recent lab work.  Id.  Dr. Rossino "assured" Plaintiff that she was "working on his behalf."  Id.  At that time, Plaintiff requested medication for treatment of his Attention Deficit Disorder.  Id.  Dr. Rossino prescribed Adderall for Plaintiff in January of 2015.[2]  ECF No. 158 ¶ 10,  On January 29, 2015, Plaintiff was seen by Dr. Rossino for a follow-up on the effectiveness of his Adderall prescription.  ECF No. 162-2 at 72.  Plaintiff believed the Adderall reduced his liver pain.  ECF No. 158 ¶ 10.

On February 12, 2015, Plaintiff was assessed by Carrie Zernick, a physician's assistant to gastroenterologist Sean A. Connelly, D.O., the specialist to whom Plaintiff had been referred by Dr. Rossino.  ECF No. 156-6.  Ms. Zernick's medical notes show that bloodwork from December 2014 was normal, with the exception of heightened levels of AST and ALT.  Id. at 1.

---

[2] Treatment records provided by Plaintiff also indicate that a prescription for Adderall was written by Dr. Rossino on December 24, 2014.  ECF No. 162-2 at 70-71.

Plaintiff was not complaining of any abdominal pain, and palpation and percussion of the abdomen revealed no tenderness during physical examination. Id. at 1-3. Plaintiff exhibited no acute distress. Id. at 3. He was diagnosed with chronic Hepatitis C, and Ms. Zernick ordered additional blood work. Id. at 4.

Plaintiff was evaluated by Dr. Connelly on March 30, 2015. ECF No. 156-7. Dr. Connelly noted that recent blood tests revealed a viral load of 1,041,184, and a recent sonogram revealed a heterogeneous liver. Id. at 1. Plaintiff complained of some insomnia and fatigue, but no abdominal pain. Id. at 1-3. Dr. Connelly did not observe any acute distress. Id. at 3. Palpation and percussion of plaintiff's abdomen showed no tenderness during physical examination. Id. Dr. Connelly concluded that Plaintiff should begin courses of prescription Viekira and Ribavirin for treatment of Hepatitis C. Id. at 4.

On April 23, 2015, Plaintiff was seen by Dr. Rossino, and once again complained of right upper quadrant pain. ECF No. 161-1 at 84. Dr. Rossino took note of Plaintiff's recent visit with Dr. Connelly. ECF No. 162-2 at 78. She recounted that Dr. Connolly recommended Plaintiff be placed on Viekira and Ribavirin for twelve weeks. Id. On May 22, 2015, Plaintiff was transferred out of the Jail. ECF No. 158 ¶ 1.

### 2.    Consultative evaluation

On August 5, 2017, following a review of pertinent medical records, as well as a telephone conversation with Plaintiff, Joseph Harris, M.D., issued a consultative evaluation of Plaintiff's Hepatitis C and the pain allegedly stemming therefrom. ECF No. 162-4. Dr. Harris noted that Plaintiff's medical history includes prior diagnoses of Crohn's Disease, Gastroesophageal Reflux Disease, Depression, Asthma, Attention Deficit Disorder, and Hepatitis C. Id. at 1. It was also indicated that Plaintiff had previously been prescribed the following

medications due to his diagnoses: Adderall, Prilosec, Remeron, and Ventolin. Id. While past intravenous drug use was reported, Dr. Harris stated that there was no history of alcohol or tobacco use.[3] Id. at 2. Dr. Harris found Plaintiff's reports of abdominal pain to be "intermittent in character and location," and likely stemmed from Hepatitis C. Id. According to Dr. Harris, inflammation and swelling of the liver can increase pressure within the Glisson's capsule, causing right upper quadrant pain. Id. Contributing factors were believed to be past intravenous drug use, as well as anxiety and depression, all of which can increase the perception of pain. Id.

Dr. Harris recommended pain treatment and tests to evaluate Plaintiff's Hepatitis C in order to cure it. Id. at 4. Dr. Harris also found that the PrimeCare protocol followed by Dr. Rossino for treatment of Hepatitis C was outdated and not in keeping with the most recent guidelines promulgated by the Centers for Disease Control. Id.

### 3. Deposition of Dr. Rossino

In her deposition, Dr. Rossino testified that, while working as the staff physician at the Jail, Plaintiff was one of many inmates with a history of Hepatitis C. ECF No. 162-1 at 7. As with these other inmates, Plaintiff was evaluated every three months and his Hepatitis C was monitored via regular blood testing for liver enzyme levels. Id. at 8. This procedure was mandated by the Hepatitis C treatment protocol which Dr. Rossino was required to learn and follow. Id. at 9-10. Dr. Rossino was not concerned with AST and ALT enzyme levels alone, but with the stability of an inmate's AST and ALT levels. Id. at 8. According to Dr. Rossino, high scores indicate a greater risk of active disease; although, a patient could have active disease even at normal levels. Id. at 24. Thus, if there was a precipitous increase, other testing and evaluation by a specialist could be warranted, and an inmate might be eligible for treatment. Id. at 8. Dr.

---

[3] Other medical records provide that Plaintiff had a history of alcohol abuse. ECF Nos. 156-3; 156-6. Plaintiff was also noted to use tobacco. ECF No. 156-3.

7

Rossino was not aware of any inmate ever receiving such treatment for Hepatitis C during her tenure at the Jail. Id.

At a typical visit, Dr. Rossino would review Plaintiff's bloodwork, and inquire as to any symptoms which he may have been experiencing. Id. at 10. She recalled that Plaintiff complained of abdominal pain on a number of occasions, often in his right upper quadrant. Id. at 12, 26. She ordered a number of tests to isolate the etiology of this alleged pain, because elevated liver enzyme levels were not necessarily correlated with pain. Id. at 12, 15. Dr. Rossino recounted that Plaintiff's case was not remarkable to her; it was only after he filed suit against her, the Jail, and PrimeCare, that she purportedly became fully aware of the extent of his allegations of pain. Id. at 12. During her visits with him, he had never appeared to be in any significant distress. Id.

Dr. Rossino recollected advising Plaintiff to eat a lower fat diet and adjust how much he ate during meals, because right upper quadrant pain is frequently a result of gallbladder-related issues such as gallstones. Id. at 15. She remembered also ordering an ultrasound that found some gallbladder "sludge," but not stones or inflammation. Id. at 19. When Plaintiff complained of nausea in conjunction with abdominal pain, Dr. Rossino prescribed him Prilosec. Id. at 22. Zantac was also tried, but Plaintiff informed Dr. Rossino that only the Prilosec provided relief. Id. at 23. At one point, Dr. Rossino believed that Plaintiff's complaints of pain indicated a potential rib issue. Id. at 25. Accordingly, she ordered a chest x-ray. Id. No abnormality was discovered. Id. at 26.

Dr. Rossino testified that, due to Plaintiff's history of narcotic abuse[4] when he first arrived at the Jail, he was prescribed Vitamin B1 and Tylenol with codeine as part of the Jail's

---

[4] Plaintiff has abused both cocaine and heroin. ECF No. 161-1 at 114.

detox protocol. Id. at 18. With respect to provision of medication to treat alleged pain, Dr. Rossino noted that Plaintiff's Hepatitis C presented certain issues. Id. at 28. Tylenol may damage the liver with long-term use, and anti-inflammatory medication can similarly damage the kidneys – which were already potentially susceptible to damage from the Hepatitis C – and upset the gastrointestinal tract. Id. She believed that use of narcotics would have been "a pretty dramatic step." Id. As such, Dr. Rossino attempted to use Prilosec and Zantac to ease abdominal discomfort, and recommended a low-fat diet. Id. Plaintiff also received Adderall. Id. at 7. Dr. Rossino claimed that she had never previously encountered an inmate claiming to suffer pain due to their Hepatitis C. Id. at 28.

### 4. Deposition of Plaintiff

Plaintiff testified that prior to his incarceration at the Jail, he had been experiencing fatigue and liver pain due to his Hepatitis C. ECF No. 162-3 at 7-8. The pain he attributed to his liver "felt like bruising." Id. at 48. Plaintiff would treat his pain with ibuprofen, Tylenol, and Aleve. Id. at 49. Plaintiff also noted that he had sought, and obtained, a Hepatitis C evaluation by Dr. Connelly[5] before his incarceration, but that no treatment had been prescribed. Id. at 8. Dr. Connelly noted that Plaintiff had chronic right-sided abdominal tenderness due to Crohn's Disease. Id. at 51. Before his incarceration, Plaintiff had not requested treatment specifically for alleged liver pain. Id. at 54.

Plaintiff recalled that he first began seeing Dr. Rossino in August 2012. Id. at 10. He claimed to consistently complain of liver pain, and would periodically file Sick Call/Medical

---

[5] Plaintiff was first evaluated by Dr. Connelly on September 24, 2010. ECF No. 161-1 at 114-116. He was noted to have a history of Hepatitis C, Crohn's Disease, colon polyps, anemia, back pain, asthma, alcohol abuse, heroin abuse, and cocaine abuse. Id. Upon physical examination, Plaintiff exhibited "very minimal discomfort to palpation of the right lower quadrant." Id. at 115. This discomfort was attributed to Crohn's Disease. Id. at 116). Bloodwork was normal, with the exception of elevated liver function tests. Id. However, Plaintiff was not considered to be a candidate for Hepatitis C treatment at that time, due to his recent history of alcohol abuse. Id. Plaintiff was otherwise considered to be well-developed and well-nourished, and was in no acute distress. Id. at 115. Follow-up bloodwork was ordered. Id. at 116.

Request slips reflecting same. Id. at 63. He believed that his abdominal pain emanated from his liver because Dr. Rossino once informed him that his liver was located in the area of his pain. Id. at 54. Plaintiff admitted that he had been seen "by experts, and they say oh, no, that's not liver pain." Id. at 81. Nevertheless, he believed that his pain was caused by his liver because of Dr. Rossino's previous statement. Id. at 81-82.

Plaintiff stated that Dr. Rossino never provided him with any pain medication. Id. at 63-64. However, Plaintiff did not recall ever asking her for pain medication. Id. at 13. Plaintiff acknowledged that Dr. Rossino ordered numerous tests in an effort to determine the cause of his pain. Id. at 67. However, he attributed the testing to an alleged desire to stall treatment of his Hepatitis C. Id. at 68. In or around January 2015, Dr. Rossino provided Plaintiff with a prescription for Adderall. Id. at 78. He believed that it helped his pain "quite a bit." Id. At the time of Plaintiff's deposition, his pain was only sporadic in nature. Id.

## B.    PROCEDURAL HISTORY

On May 7, 2014, Plaintiff filed his initial Complaint, *pro se*, in the Court of Common Pleas of Lawrence County. ECF No. 1-3. The Complaint was removed to this Court on July 2, 2014. ECF No. 1. The operative Second Amended Complaint followed on August 26, 2014. ECF No. 20. Defendant filed her Answer on June 26, 2015. ECF No. 51. Upon the conclusion of discovery, the Court issued a scheduling order for summary judgment motions. ECF No. 150. Consequently, the present Motion was filed on June 8, 2017. ECF No. 155. The matter now being fully briefed, ECF Nos. 156-58, 161-62, 164, 167, 172, the Motion is ripe for disposition.[6]

---

[6] Although Plaintiff initially proceeded *pro se*, current counsel entered their appearances for Plaintiff on November 2, 2016, and November 17, 2016. ECF Nos. 137, 141.

## C.    STANDARD OF REVIEW

A grant of summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Heffernan v. City of Paterson, 777 F.3d 147, 151 (3d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). A genuine issue of material fact is one that could affect the outcome of litigation. Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). However, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2011) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine issues. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). When considering the parties' arguments, the Court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. Id. (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. Bialko v. Quaker Oats Co., 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing Valhal Corp. v. Sullivan Assocs., 44 F. 3d 195, 200 (3d Cir. 1995)).

11

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) (citing Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773 (3d Cir. 2013) (citing Celotex Corp., 477 U.S. at 324).

### D.    ANALYSIS

In the Amended Complaint, Plaintiff alleges the "Legal Claims" of "Deliberate Indifference of the defendants to the plaintiffs serious medical needs have violated the plaintiffs right to Due Process under the 14th Amendment to the United States Constitution as a pretrial detainee." ECF No. 20 at 18-19.

In the instant Motion for Summary Judgment, Defendant argues that the evidence of record presents no genuine disputes of material fact, and that she is entitled to judgment as a matter of law. Specifically, Defendant argues that she provided treatment for pain allegedly stemming from Plaintiff's diagnosed Hepatitis C,[7] and that Plaintiff's disagreement with her

---

[7] There is a dispute between the parties as to whether Plaintiff's claim with respect to the treatment of his Hepatitis C, specifically, is still a viable cause of action. In Section I of this Court's Report and Recommendation on the Motion to Dismiss, it was stated that "Plaintiff's Second Amended Complaint alleges his disagreement with the course of treatment for his Hepatitis C, which this Court agrees is not sufficient to sustain a claim upon which relief may be granted." ECF No. 39 at 1. The Court also found that, in light of "his allegation that Defendants Rossini and Luffey were aware of but refused to treat Plaintiff's *severe pain*, at this early stage of the litigation, Plaintiff has alleged sufficient facts to support a claim upon which relief may be afforded." Id. at 1-2 (emphasis added). In footnote 1 of the Report and Recommendation, the Court states that "going forward, should the evidence point to a dispute over the form of treatment or diagnostic techniques, or a claim of negligence, Defendants will be entitled to the entry of judgment in their favor." Id. at 7 n. 1. This Court concluded its Report and Recommendation by finding that, "Plaintiff has sufficiently pleaded that…Defendants were deliberately indifferent to his *pain*." Id. at 7 (emphasis added). In its Memorandum Order, the District Court adopted the entirety of the Report and Recommendation, "with the exception of footnote one." ECF No. 43 at 1. Plaintiff believes that the District Court's decision to exclude this footnote is equivalent to sustaining his claim for deliberate indifference as it pertains to treatment of his Hepatitis C. However, as noted by Defendant, Plaintiff's assertion is at odds with the explicit recommendation in Section I – which the District Court adopted – that, although Plaintiff alleges disagreement with

12

medical judgment is not a cognizable basis for a claim of deliberate indifference to medical

needs under 42 U.S.C. § 1983.  ECF Nos. 156 at 9-14; 167 at 5-15.  Plaintiff counters that

Defendant utterly failed to provide any meaningful treatment for his pain, and that this omission

amounted to deliberate indifference.  ECF Nos. 162 at 11-14; 172 at 1-5.

### 1.    Legal standards

#### a.    42 U.S.C. § 1983

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law....

Congress conceived § 1983 as a safeguard against deprivations of individual rights conferred by

federal statutes and the Constitution.  City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S.

113, 119 (2005) (citing Maine v. Thiboutot, 448 U.S. 1, 4 (1980)).  In order to properly state a

valid § 1983 claim, a plaintiff must demonstrate that an individual acting under color of law

violated enumerated constitutional or statutory rights.  Berg v. Cty. of Allegheny, 219 F.3d 261,

268 (3d Cir. 2000).  When evaluating such a claim, the Court must "'identify the exact contours

of the underlying right said to have been violated' and determine 'whether the plaintiff has

alleged a deprivation of a constitutional right at all.'"  Chavarriaga v. N.J. Dep't of Corr., 806

F.3d 210, 222 (3d Cir. 2015) (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).  The

Court must then determine whether a plaintiff demonstrated a defendant's "'personal

involvement in the alleged wrongs.'"  Id. (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207

---

the course of treatment for his Hepatitis C, it is "not sufficient to sustain a claim upon which relief may be granted."
ECF No. 39 at 1.  Plaintiff even acknowledged as much in his deposition, stating: "I think I have a much stronger
case regarding the Hep C portion even though it's been dismissed at this point."  ECF No. 162-3 at 39.  Accordingly,
the Court will consider Plaintiff's claim of deliberate indifference only as it relates to treatment of his pain.

(3d Cir. 1988)). "A plaintiff 'must portray specific conduct by state officials'" to make such a showing. Id. (quoting Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970)).

### b.    Fourteenth Amendment

At the time of the events in question, Plaintiff was a pretrial detainee and the Eighth Amendment's prohibition of cruel and unusual punishment had not yet attached; as such, Plaintiff's § 1983 claims are asserted pursuant to the Fourteenth Amendment's substantive due process protection against abuse of government power. Vargo ex rel. Vargo v. Plum Borough, 376 F. App'x 212, 215 (3d Cir. 2010) (citing Colburn v. Upper Darby Twp., 838 F.2d 663, 668 (3d Cir. 1988)). The Fourteenth Amendment "'affords pretrial detainees protections at least as great as the Eighth Amendment.'" Estate of Thomas v. Fayette Cty., 194 F. Supp. 3d 358, 369 n.9 (W.D. Pa. 2016) (quoting Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003)). As such, the standard utilized by the Court to analyze the adequacy of Plaintiff's Fourteenth Amendment claim will be the same as under the Eighth Amendment. Hubbard v. Taylor, 399 F.3d 150, 166 n. 22 (3d Cir. 2005) (citing Natale, 318 F.3d at 581-82).

It is well-established that the Eighth Amendment "proscribes more than physically barbarous punishments," but also the provision of sub-standard medical care to an inmate "who cannot by reason of the deprivation of his liberty, care for himself." Estelle v. Gamble, 429 U.S. 97, 102-04 (1976) (citations omitted). See also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (Prisons "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care."). In order to state a claim for deliberate indifference to medical needs, a claimant must make "(1) a subjective showing that 'the defendants were deliberately indifferent to his or her medical needs' and (2) an objective

14

showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 805 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

### 2.    Plaintiff's case

#### a.    Serious medical need

As to the second element, above, there is no dispute among the parties that Plaintiff had a serious medical need. Thus, this element of the deliberate indifference test is met. However, Plaintiff claims that his pain went untreated due to the deliberate indifference of Dr. Rossino. Defendant counters that Plaintiff merely disagrees with Dr. Rossino's diagnoses and manner of treatment, and such a disagreement cannot form the basis for a claim of deliberate indifference.

#### b.    Deliberate indifference

As to the first element, courts have long characterized deliberate indifference as a "'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" Parkell v. Danberg, 833 F.3d 313, 335 (3d Cir. 2016) (quoting Nicini, 212 F.3d at 811). Deliberate indifference has been found to exist where a prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Id. at 337 (citing Rouse, 182 F.3d at 197). Prison officials may not "'deny reasonable requests for medical treatment when such denial exposes the inmate to undue suffering or the threat of tangible injury.'" Palakovic v. Wetzel, 854 F.3d 209, 228 (3d Cir. 2017) (quoting Monmouth Corr. Inst. Inmates, 834 F.2d at 346).

However, "'inadequate care that was a result of an error in medical judgment'" is not actionable. Parkell, 833 F.3d at 337 (quoting Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)). Where an inmate has received some medical treatment, deliberate indifference is

difficult to demonstrate. Palakovic, 854 F.3d at 227 (citing Durmer, 991 F.2d at 67). There must be evidence that risks to a plaintiff's health were deliberately ignored. Parkell, 833 F.3d at 338.

In the instant case, Plaintiff was incarcerated at the Jail for approximately thirty-five months. In that time period, the record shows that he was seen on roughly sixteen occasions for monitoring of his Hepatitis C, as well as related complaints of pain. He was also twice sent to the offices of Dr. Connelly for evaluation. Only four Sick Call/Medical Request slips pertaining specifically to his liver pain were submitted. On each occasion, Plaintiff was seen by Dr. Rossino within a few days. Beginning with a visit to Dr. Rossino on September 19, 2013, until just before a visit on August 28, 2014, the record – including Dr. Rossino's medical notes – reflects no complaints of abdominal pain. Neither were there subjective or objective indications of liver pain in any of Dr. Connelly's medical notes.

Nonetheless, about ten of Plaintiff's visits to Dr. Rossino included complaints of pain and/or objective indications of tenderness of the abdomen. Dr. Rossino did not prescribe analgesic medications following any of these examinations. Plaintiff asserts that this is evidence of deliberate indifference to his pain. Yet, the deliberate indifference "standard 'affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients,' and we must 'disavow any attempt to second-guess the propriety or adequacy of their particular course of treatment' so long as it 'remains a question of sound personal judgment.'" Pearson, 850 F.3d at 538 (quoting Inmates of Allegheny Cty. Jail v. Pierce, 612 F. 2d 754, 762 (3d Cir. 1979)). Plaintiff must be able to demonstrate to this Court that Dr. Rossino acted with obduracy and wantonness, fully appreciating the true seriousness of the risk of harm to Plaintiff, and not due to inadvertence or error. Id. at 539 (citing Whitely v. Albers, 475 U.S. 312, 319 (1986)).

16

To this end, the Court notes the following: when Plaintiff complained of pain to Dr. Rossino on November 9, 2012, she did not prescribe any medications or other treatment; however, she did report that he did not appear to be in any distress at that time. At an examination on December 6, 2012, when she believed that his complaints of pain may be consistent with a gallbladder-related malady, she prescribed Prilosec and a low fat diet. She also ordered an ultrasound of the gallbladder. There were no complaints of pain at a February 7, 2013, examination. In response to complaints of pain on May 12, 2013, Dr. Rossino ordered an x-ray to determine if the cause was due to an issue with Plaintiff's ribs. On June 13, 2013, although some diffuse tenderness and possible liver enlargement were noted on physical examination, Dr. Rossino did not observe Plaintiff to be in any distress, and asked Plaintiff to see her again in a week. On June 20, 2013, Plaintiff returned with continued complaints of pain. Dr. Rossino advised him to eat a low-fat diet.

Until August 28, 2014, there are no further records or reports of abdominal pain. Even then, Dr. Rossino did not observe Plaintiff to be in any distress. Nonetheless, Plaintiff was ordered to see Dr. Connelly for a Hepatitis C evaluation. Dr. Connelly and his staff recorded no subjective or objective reports of liver pain in Plaintiff's abdomen. On January 29, 2015, Plaintiff informed Dr. Rossino that a prescription for Adderall which she had provided to him had reduced his alleged liver pain. Plaintiff complained of liver pain at an April 23, 2015, appointment with Dr. Rossino. No treatment was ordered, and Plaintiff was subsequently transferred from the Jail on May 22, 2015.

As noted by Plaintiff's consultative physician, Dr. Harris, Plaintiff's history of abdominal pain was "intermittent in character and location." ECF No. 162-4 at 2. Additionally, the record shows that there were often significant spans of time between complaints of pain. It appears

17

from the medical notes that Dr. Rossino did not generally observe Plaintiff to be in distress, and preferred to eliminate potential causes of pain through testing rather than to simply prescribe pain medication – which there is no indication Plaintiff ever requested.[8]   In Dr. Harris's consultative report, he notes that a number of analgesic medications may be appropriate for treatment of Plaintiff's pain, yet he does not criticize Dr. Rossino's failure to prescribe such medications, only the outdated Hepatitis C protocol maintained by PrimeCare. ECF No. 162-4 at 4. Similarly, there is no criticism of Dr. Rossino's treatment by Dr. Connelly.

Indeed, even viewed in the light most favorable to Plaintiff, the record shows that Plaintiff did not want for medical attention. Where "'a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" Fantone v. Herbik, 528 F. App'x 123, 125 (3d Cir. 2013) (quoting United States ex rel. Walker v. Fayette Cty., 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). "'[C]laims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference.'" Id. at 126 (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 193 (3d Cir. 2001)).

Here, Plaintiff has failed to illustrate that failure to prescribe pain medication for his allegations of liver pain was the result of deliberate indifference, as opposed to medical judgment. Stones v. McDonald, 573 F. App'x 236, 238 (3d Cir. 2014). As noted by Plaintiff, Dr. Rossino prescribed him Prilosec, Zantac, and Adderall during the time period in question, as

---

[8]  Plaintiff claims that he simply cannot recall whether he ever asked for pain medication.  Although courts have held that a lack of recollection may create a question of fact for resolution by a jury, Hendricks v. Pittsburgh Pub. Sch., Civ. A. No. 13-491, 2015 WL 540030, at *7 (W.D. Pa. Feb. 10, 2015), failure to prescribe requested pain medication is not, alone, sufficient to constitute deliberate indifference.  See Gause v. Diguglielmo, 339 F. App'x 132, 136 (3d Cir. 2009) (denial of requested medication amounts to mere disagreement over treatment); Kovach v. Kerestes, 2014 WL 3891749, at * 6 (M.D. Pa. Aug. 7, 2014) (assertion that pain medication was not prescribed represented nothing more than a disagreement with medical care, which is not actionable under § 1983).

well as ibuprofen for isolated complaints of knee pain. ECF No. 161 at 16. He has provided no evidence that Dr. Rossino deliberately ignored complaints of liver pain, and the assertion that she would do so is belied by her provision of medications for other complaints of pain. Aside from his own conclusory allegations, Plaintiff has not adduced circumstantial or extrinsic evidence suggesting that Dr. Rossino's response to Plaintiff's intermittent complaints of liver pain was "'a substantial departure from accepted professional judgment, practice, or standards' such that a reasonable jury could conclude that she 'actually did not base her decision on such judgment.'" Pearson, 850 F.3d at 539 (quoting Youngberg v. Romeo, 457 U.S. 307, 323 (1982)). At best, Dr. Rossino's failure to prescribe analgesics was negligence or medical malpractice, not conduct constituting obduracy or wantonness, or a conscious decision to ignore a risk to Plaintiff's well-being. Thus, Plaintiff's claim under § 1983 is insufficient to survive summary judgment.

###   E.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Summary Judgment, ECF No. 155, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated:  December 13, 2017

Respectfully submitted,

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:    The Honorable David S. Cercone
       United States District Judge

       All counsel of record via CM-ECF