## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN THOMAS MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-870 |
| | ) | |
| v. | ) | Judge David Stewart Cercone |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| SUSEN ROSSINO, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

AND NOW, this 2nd day of March, 2018, after *de novo* review of the record and upon due consideration of [173] the Chief Magistrate Judge's Report and Recommendation of December 13, 2017, [176] plaintiff's objections thereto and [179] defendant's response to those objections, IT IS ORDERED that [155] the Motion for Summary Judgment filed by defendant Susen Rossino, M.D. ("defendant"), be, and the same hereby is, granted. Summary judgment in favor of defendant and against plaintiff is hereby entered on all claims remaining in the case. The magistrate judge's report and recommendation as augmented herein is adopted as the opinion of the court.

We agree with magistrate judge's determination that plaintiff's claim against defendant regarding the treatment of his Hepatitis C was dismissed at the pleading stage and the claim remaining for consideration relates solely to plaintiff's complaints of pain arising in conjunction with the treatment he sought for his Hepatitis C. But assuming for the sake of argument that that ruling was erroneous, defendant nevertheless would be entitled to judgment "on all claims remaining in the case" because the construction of the record, law and reasoning in the magistrate judge's report and recommendation as augmented herein would apply with equal force to both plaintiff's claim involving the treatment he received for his Hepatitis C and the pain he experienced and was required to endure in relation to that treatment.

Plaintiff's objections are without merit. Plaintiff's efforts to whitewash the course of treatment he received under the supervision of defendant into a case of "failure to treat" on the grounds that "the treatment provided was so cursory that it amounted to no treatment at all" is unavailing. Plaintiff's Brief in Opposition (Doc. No. 162) at 6, 13. Although less than cutting edge, the treatment that plaintiff did receive for his Hepatitis C did not fall to a level implicating the "broad and idealistic concepts of dignity, civilized standards, humanity and decency" that provide the underpinnings for defining the reaches of the Eight Amendment. Estelle v. Gamble, 429 U.S. 97, 102 (1976). And with regard to the pain that plaintiff suffered over the course of his incarceration at the Lawrence County jail, the record fails to contain sufficient evidence to support a finding either that defendant caused plaintiff to endure an unnecessary or wonton infliction of pain or that defendant was otherwise deliberately indifferent to the complaints and symptoms of pain that plaintiff did have when he presented for treatment.

Each matter raised by plaintiff in his objections merely reiterates an argument or construction of the record that was considered by the magistrate judge and found to be insufficient to preclude summary judgment. In each instance plaintiff's objections are at base grounded in a subjective belief that defendant should have reacted differently, done more or reached different assessments and conclusions with regard to plaintiff's presentations for medical treatment and the test results generated in conjunction therewith. Of course, dissatisfaction of this nature is not the concern of the Eighth Amendment. See Estelle, 429 U.S. at 106 (mere negligent misdiagnosis or treatment is not actionable because medical malpractice is not a constitutional violation); Ramos v. Lamm, 639 F.2d 559, 575 (3d Cir. 1980) ("accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do not constitute a medical wrong under the Eighth Amendment. See Estelle v. Gamble, supra, 429 U.S. at 105-06 . . . . A fortiori, a mere difference of opinion between the

prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. See, e. g., Bowring v. Godwin, supra, 551 F.2d at 48; Smart v. Villar, 547 F.2d 112, 114 (10th Cir.)); Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d, 326, 346 (3d Cir. 1987) ("mere disagreement as to the proper medical treatment" is insufficient in establishing a constitutional violation) (citing Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir.1977); Massey v. Hutto, 545 F.2d 45, 46 (8th Cir. 1976) (per curiam)").

Moreover, plaintiff misunderstands the nature of his burden in the instant matter. The Supreme Court has made clear that proving "deliberate indifference entails something more than mere negligence" and requires proof of a subjective standard that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the official did in fact "draw the inference." Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). The United States Court of Appeals for the Third Circuit has found deliberate indifference in a number of instances involving the need for medical care within a penal facility, "including where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." Pearson v. Prison Health Service, 850 F.3d 526, 538 (3d Cir. 2017) (citing Lanzaro, 834 F.2d at 347).

Three principles are brought into play where a detainee seeks to establish deliberate indifference predicated on the adequacy of medical care provided in response to complaints involving a serious medical need. Pearson, 850 F.3d 535. They are: 1) deliberate indifference involves proving a subjective state of mind that can be accomplished through circumstantial evidence and witness testimony; 2) a critical distinction exists "between cases where the

complaint alleges a complete denial of medical care and those alleging inadequate medical treatment"; and 3) a mere showing of inadequate medical care does not itself prove the defendant acted with deliberate indifference.  Id.

Because the mere inadequacy of care does not suffice to establish deliberate indifference, a plaintiff seeking to prevail in a dispute involving the adequacy of medical care has a sub-component in proving deliberate indifference that is not present in other situations.  In this scenario the prisoner must show objectively that the treatment fell below the standard of care and then show that the deviation was the result of something more than inadvertence or a mistake in medical judgment.  Id.  In other words, a plaintiff seeking to establish deliberate indifference in an adequacy of care context must advance evidence that sufficiently displaces the presumption "that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."  Id. (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights")).

This means that competent evidence such as expert testimony is required where the jury "would not be in a position to determine that the particular treatment or diagnosis fell below a professional standard of care."  Id.  Absent such testimony, the record must contain "other forms of extrinsic proof" that constitute sufficiently reliable evidence to permit such a finding.  Id. (citing Brighthwell v. Lehman, 637 F.3d 187, 194 n.8 (3d Cir. 2011)).

Plaintiff does not advance sufficient competent evidence to permit the trier of fact to determine that Dr. Rossino acted with deliberate indifference in providing treatment in response to plaintiff's complaints of liver pain.  Each segment of information proffered by plaintiff to meet that threshold falls short of the mark.  First, plaintiff's repeated invocation of the protocol established by PrimeCare Medical, Inc., does not have the import plaintiff claims.  Dr. Rossino

made clear that the degree of elevation of plaintiff's liver enzymes in themselves did not correlate directly with active or increasing liver inflammation or damage from Hepatitis C. To the contrary, one could have active liver disease even with normal enzyme scores. What is more important is to be aware of rapid changes in connection with other objective signs present on presentation. Plaintiff's liver enzyme tests remained fairly consistent and did not reflect rapid changes. In this regard, physical examination was an important tool in evaluating whether further testing or referral to a specialist for treatment was warranted. Presenting with jaundice would be a concern, throwing up, losing significant weight, copious stools and tenderness upon palpitation likewise were objective signs that could signal a need for further action. Given the qualitative information from plaintiff's test results and the objective findings on presentation, the protocol by Primecare merely permitted the option of referring plaintiff for additional testing such as a Hepatitis C qualitative RNA assay and follow-up with a specialist for possible further treatment, but it did not mandate that course of action and/or such treatment.

Moreover, because patients with Hepatitis C do not ordinarily experience pain from the disease, plaintiff's reports of right upper quadrant pain, which at times appeared to be present in other areas of the quadrant as well, triggered a need to eliminate other potential causes of the pain in an effort to provide plaintiff with comfort. Thus, Dr. Rossino checked for gallbladder disease, counseled plaintiff on trying to eat a lower fat diet within the restraints imposed by the institution, ordered ex-rays of the rib cage when plaintiff's complaints of pain shifted to that area and sought to minimize stomach acid to assure plaintiff's pain was not the result of acid reflux. Tellingly, plaintiff reported that the medication for his attention deficit disorder actually reduced the pain he associated with the need for treatment of his Hepatitis C. Thus, the protocol and objective findings did not mandate a more aggressive course of action for treatment of plaintiff's Hepatitis C.

Second, Dr. Harris' expert report does not supply evidence that Dr. Rossino's decisions to monitor plaintiff's liver enzymes and seek to eliminate other causes for his quadrant pain fell below the professional standards of care at any given point in time. Dr. Harris agrees that 1) there is "no correspondence between the degree of liver damage and the LFT/ALT enzyme levels except [where they appear at really high levels]" and 2) severe liver damage can occur with low or normal lever enzyme test results. What Dr. Harris does criticize is Primecare's failure to update its protocol when the Center for Disease Control updated its recommendations with regard to living with liver disease after the Food and Drug Administration approved the use of two new direct-acting antiretroviral medications in 2013. The use of these new drugs effectively revolutionized the care for treatment of patients with Hepatitis C by making the "standard of care" in both the community and the federal Bureau of Prisons one of "cure for all."

Dr. Rossino was a family practitioner. Her medical obligations related to monitoring plaintiff's condition and referring him for follow-up with a specialist when warranted by the attendant circumstances. While the availability to treat Hepatitis C through new antiretroviral drugs did become available in 2013, and created what appears to be the new goal of cure, Dr. Harris' report falls woefully short of supplying specific evidence that the actions Dr. Rossino took at any particular point fell so short of the standard of care expected by a family practitioner that they not only violated the professional standards governing such community care, but were egregious enough to permit a finding that they amounted to the type of wantonness that will constitute a form of cruel and unusual punishment.[1]  Compare Pearson, 850 F.3d at 539-40 (a medical professional's failure to appreciate the severity of a prisoner's medical condition or misdiagnosis of the same in the course of providing medical treatment, such as interpreting the

---

[1] This assessment only is bolstered by the fact that plaintiff had a history of intravenous narcotic addition, insomnia, depression, anxiety and other conditions which had the potential to increase his sensitivity to pain.

symptoms of a appendicitis as a failing gall bladder, does not create a triable issue of fact under the Eight Amendment).  In other words, Dr. Harris' acknowledgement that a more worthy goal through a better course of treatment existed is not a basis for a jury to find that Dr. Rossino's chosen course was such a deviation that the subjective components of deliberate indifference may be inferred.  Cf. White v. Napoleon, 897 F.2d 103, 100 (3d Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor.  There may, for example, be several acceptable ways to treat an illness.").

The notes of treatment and report from plaintiff's examination and consultation with Dr. Connelly likewise do not supply evidence that Dr. Rossino's course of treatment fell below the applicable standard of professional care governing her monitoring and treatment of plaintiff's Hepatitis C.  When plaintiff presented to Dr. Connelly plaintiff's bloodwork was not significantly different from the results obtained under Dr. Rossino's monitoring.  And at two separate physical presentations, one with physician assistant Zernick and one with Dr. Connelly, plaintiff did not complain of abdominal pain nor did he present in a state of acute distress.  Dr. Connelly's physical examination of plaintiff produced objective findings that confirmed these observations.  Nothing in this aspect of the record indicates that Dr. Rossino's decisions regarding the monitoring and potential need for treatment was such a substantial departure from the care expected from a general family practitioner that she did not base her decisions on medical judgment.  Id. at 538-39 (inadequate diagnosis in providing medical treatment, such as failing to appreciate the severity of a prisoner's condition, does not establish that the treatment decision was such "a substantial departure from accepted professional judgment, practice or standards" that a reasonable jury could conclude the decision was not based on medical judgment).

Plaintiff has not advanced any competent evidence to discredit Dr. Rossino's assessments and understandings as to when further measures in the treatment of plaintiff's Hepatitis C would have been necessary to avoid a substantial risk of serious harm from the existing conditions with which plaintiff was presenting. Neither the treating specialist, Dr. Connolly, nor the reviewing expert, Dr. Harris, indicated Dr. Rossino's chosen course of treatment in relation to plaintiff's presentations and test results fell below the requirements of competent medical care to a degree that will permit a finding that they were based on something other than medical judgment. In other words, neither Dr. Harris' report not Dr. Connelly's treatment records supply sufficient forms of extrinsic proof to displace the presumption that the course of treatment, although conservative and in lieu of other responses to plaintiff's sporadic complaints of quadrant pain, objectively deviated from professional standards to a degree that creates a triable issue about her decisions in providing treatment.

Against this backdrop plaintiff's own self-serving assertions about what the appropriate responses to his complaints and requests should have been likewise are insufficient to create a triable issue on whether Dr. Rossino's treatment decisions were made with deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (An inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.). In this regard plaintiff misperceives the import of the court's summary of the records from defendant and the consulting and expert physicians. Collectively, those documents indisputably indicate that over a substantial period of time when plaintiff presented for examination or treatment he was not in acute distress as that term is understood in the context of medical practice. Nor was he otherwise in need of immediate medical treatment for severe or debilitating pain. And as observed by Dr. Harris, plaintiff's complaints regarding his upper quadrant pain were intermittent in character and location. The objective findings from physical examinations by Dr. Rossino and

Dr. Connelly corroborated the accuracy of this assessment. Plaintiff's efforts to undermine the observations and the information defendant recorded in the process of treating him through vague and self-serving assertions fail to provide meaningful probative evidence to create a triable issue of fact. See Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992) (at summary judgment an opponent cannot "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs"); Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990) (Mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion.).

As the magistrate judge's report made clear, plaintiff has failed to produce sufficient evidence to support a finding that Dr. Rossino's decision not to prescribe pain medication in response to plaintiff's complaints of right upper quadrant pain was the result of an intentional or wanton act aimed at causing plaintiff to endure further suffering needlessly. It is undisputed that plaintiff had numerous medical conditions that could have been a contributing cause to his pain. Dr. Connelly's treatment evaluation reiterated these with sufficient documentation of their history and concomitant potential to influence plaintiff's subjective tolerance to pain. The record clearly reflects that Dr. Rossino monitored plaintiff's condition for elevated risk and sought to identify other potential causes of his pain when his reports and an objective examination suggested there might be other causes for it.

It also is clear that whether considered separately or cumulatively, the segments of plaintiff's evidence pertaining to the nature and degree of medical care provided fail to provide sufficient evidence to support the proposition that Dr. Rossino's course of conservative treatment was such a departure from the generally accepted medical practice of a family practitioner that the trier of fact could draw the inference of deliberate indifference. Because the cumulative import of plaintiff's evidence fails to supply sufficient extrinsic proof to survive defendant's

request for summary judgment, defendant's motion has been granted on all remaining claims in the case.


s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge


cc:    The Honorable Maureen P. Kelly,
       Chief United States Magistrate Judge

      Louis J. Kroeck, IV, Esquire
      Bret Grote, Esquire
      Terry C. Cavanaugh, Esquire
      Brett C. Shear, Esquire

      (*Via CM/ECF Electronic Mail*)